IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -3 P 2: 5 I

U.S. DISTRICT COURT
DISTRICT OF MASS

| VERA GROPPER, | |
| Plaintiff, | |
| v. | CIVIL ACTION No. **05 - 1021 7 WGY** |
| MERCK & CO., INC., and John and Jane Does, as Sales Representatives for MERCK & CO, INC., | |
| Defendants. | |

RECEIPT #
AMOUNT $ ____
SUMMONS ISSUED ____
LOCAL RULE 4.1 ____
WAIVER FORM ____
MCF ISSUED ____
BY DPTY. CLK. ____
DATE 2/3/05

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, defendant Merck & Co, Inc. ("Merck") files this Notice of

Removal and states:

MAGISTRATE JUDGE ____

1.      Merck is the single named defendant[1] in an action commenced against it by the

plaintiff, Vera Gropper, pending in Middlesex County Superior Court in the Commonwealth of

Massachusetts, captioned <u>Vera Gropper v. Merck & Co, Inc.</u>, Civil Action No. 04-4301 (the

"Superior Court action").  True copies of all process, pleadings and orders served on Merck in

the Superior Court action are attached hereto as Exhibit A and specifically incorporated herein.

2.      In her Complaint, Plaintiff Vera Gropper alleges that she is a resident of

Massachusetts.  Defendant Merck is a corporation organized under the laws of the State of New

Jersey with a principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

There is, therefore, complete diversity of citizenship.

3.      The Plaintiff claims compensatory damages for a "Myocardial Infarction,"

medical expenses, mental and physical pain and suffering, loss of present and future earnings,

---

[1]      The Complaint also lists unnamed Merck sales representatives as "John and Jane Doe" defendants.  Federal law provides, however, that "[f]or purposes of removal . . . , the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).

and treble damages under Chapter 93A of the Massachusetts General Laws. Accordingly, Merck

suggests that the matter in controversy in the state action will exceed the sum or value of

$75,000, exclusive of interest and costs.

4.     Merck was served with a summons and a copy of plaintiff's Complaint and

Demand for Jury Trial on January 14, 2005. Consequently, this notice is timely under 28 U.S.C.

§ 1446(b).

5.     This action is one of which this Court has jurisdiction pursuant to 28 U.S.C.

§ 1332 and that may be removed to this Court by Merck.

                              MERCK & CO., INC.
                              By its attorneys:


                              _____
                              James J. Dillon (BBO# 124660)
                              Bradley E. Abruzzi (BBO# 651516)
                              FOLEY HOAG LLP
                              155 Seaport Boulevard
                              Boston, MA  02110-2600
                              (617) 832-1000

Dated: February 3, 2005

### CERTIFICATE OF SERVICE

     I certify that a true copy of the foregoing NOTICE OF REMOVAL was served on
February 3, 2005 by hand, upon:

David C. Strouss
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110
**Counsel for Plaintiff Vera Gropper**


_____


CT System


RECEIVED
JAN 1 7 2005

**Service of Process Transmittal Form**
Boston, Massachusetts

01/14/2005

Via Federal Express (2nd Day)

**TO:** Debra A Bollwage Assistant Secretary
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889-0100

**RE:** **PROCESS SERVED IN MASSACHUSETTS**

**FOR** Merck & Co., Inc. Domestic State: NJ

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| 1. TITLE OF ACTION: | Vera Gropper, Pltf vs Merck & Co, Inc et al, Dft |
| 2. DOCUMENT(S) SERVED: | Summons, Complaint |
| 3. COURT: | Commonwealth of Massachusetts, Middlesex Superior Court Case Number 04-4301 |
| 4. NATURE OF ACTION: | Product Liability |
| 5. ON WHOM PROCESS WAS SERVED: | CT Corporation System, Boston, Massachusetts |
| 6. DATE AND HOUR OF SERVICE: | By Process server on 01/14/2005 at 12:00 |
| 7. APPEARANCE OR ANSWER DUE: | Within 20 Days |
| 8. ATTORNEY(S): | No address given |
| 9. REMARKS: | |

SIGNED CT Corporation System

PER Yvette Concepcion /AL
ADDRESS 101 Federal Street
Boston, MA 02110
SOP WS 0006919011

Information contained on this transmittal form is recorded for CT Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

.........MIDDLESEX........., ss
[seal]

No.
04-4301

Vera Gropper
........................................., Plaintiff(s)

v.

Merck & Co., Inc. and John and Jane Does,
as Sales Representatives for Merck & Co., Inc.
........................................., Defendant(s)

## SUMMONS

To the above-named Defendant Merck & Co., CT corporation, 101 Federal Street, Boston, MA

You are hereby summoned and required to serve upon David C. Strouss, Esquire, Thornton

& Naumes, LLP................................... plaintiff's attorney, whose address is ....100 Summer Street, 30th Floor

Boston, MA 02110 ................................................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ....Cambridge, MA........

.................................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ............................. ......................................

the ....12th.......................... day of ..January..... ......................................

.................., in the year of our Lord ..2004.............................

A TRUE COPY ATTEST

CONSTABLE

Edward J Sullivan
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

04 - 4301

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPT. OF THE TRIAL
COURT

)
VERA GROPPER,                    )
Plaintiff                        )                    **COMPLAINT**
                                 )
                                 )
                                 )
vs.                              )
                                 )
                                 )
MERCK & CO., INC.,               )
and John and Jane Does, as       )
Sales representatives for        )
MERCK & CO., INC.,               )
    Defendants.                  )
_____)

Now comes the plaintiff, by her attorneys, and
files the following complaint:

1.    Party Plaintiff

The Plaintiff, Vera Gropper, resides at 14
Hall Avenue, Somerville, Massachusetts, 02144,
and at all relevant times herein, was a resident
of the Commonwealth of Massachusetts.

2.    Party Defendants

2A.    The Defendant, Merck & Co., Inc.,
(hereinafter "Merck") is a corporation
incorporated under the laws of the State of New
Jersey, having a principal place of business in
the State of New Jersey, and has conducted
business in the Commonwealth of Massachusetts.
At all relevant times, hereto, Merck was in the

1

business of promoting, marketing, and
distributing the pharmaceutical VIOXX (Refecoxib).

2b. John and Jane Does are sales
representatives for Merck promoting and
distributing VIOXX to physicians within the
Commonwealth of Massachusetts. Upon information
and belief all or some of the John and Jane Doe
Sales Representatives are individuals residing in
the Commonwealth of Massachusetts.

As used in this Complaint, the term
"defendant" shall include any party defendants
identified in paragraphs 2a through 2b hereof,
and their predecessors, which shall include, but
is not limited to, any person, corporation,
company or business entity: which formed part of
any combination, consolidation, merger or
reorganization from which any party defendant was
created or was the surviving corporation; whose
assets, stock, property, products or product line
was acquired by any party defendant; whose patent
rights, trademark rights, trade secrets of
goodwill was acquired by any party defendant; or
which was dominated or controlled by any party
defendant to such an extent that said party
defendant was the "alter ego" of said
corporation.

### JURISDICTION

3. The plaintiff's cause of action arises
from the defendants' (1) transacting business in
Massachusetts; (2) contracting to supply and/or
sell goods in Massachusetts; (3) doing or causing

2

a tortuous act to be done in Massachusetts;
and/or (4) causing the consequence of a tortuous
act to occur within Massachusetts, and the
defendants do, or solicit business, or engage in
a persistent course of conduct or derive
substantial revenue from the sale of goods in
Massachusetts.

## FACTS

4.   At all relevant times herein, the
defendants individually and/or in conjunction
with other persons or entities for whose conduct
they were legally responsible developed, created,
manufactured, designed, tested, labeled,
packaged, distributed, supplied, marketed, sold,
advertised, and/or otherwise distributed in
interstate trade and commerce the drug VIOXX.

5.   On information and belief, the drugs
were manufactured, distributed, and sold as
medication to relieve the signs and symptoms of
osteoarthritis and rheumatoid arthritis, for the
management of acute pain in adults, and the
treatment of primary dysmenorrheal.

6.   In May of 1999 VIOXX was approved by the
FDA. The defendants individually began actively
and aggressively promoting, marketing and selling
the drug in the United States and eighty other
countries.   The defendants fraudulently induced
people to use its drug for arthritis and pain
relief without adequately warning people of the
risks associated with the drug that were known or
should have been known to the defendants.

3

7. The defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8. The defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9. On information and believe MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

10. On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11. The Defendant MERCK did not communicate the findings of cardiovascular risks from the

4

VIGOR study until April 2002 when they sent a
"Dear Doctor" letter and made changes and
additions to VIOXX label regarding cardiovascular
risks under the header "Precautions". MERK did
not add stroke or any of the other adverse
reactions linked to VIOXX that it knew or should
have known.

12.   The defendants engaged in and/or
actively participated in inducing and/or
encouraging use of VIOXX by providing incentives
for its use and by encouraging physicians and
other health care providers to prescribe it
without the benefit of the full and complete
information known to the defendants.   The
defendants disseminated false and misleading
materials which failed to disclose the risks
associated with the use of VIOXX.

13.   Upon information and belief, the
defendants also unfairly and deceptively
encouraged the use of VIOXX, by falsely
misleading potential users including the
plaintiff, Vera Gropper, concerning the risks
associated with its use.   By affirmative
misrepresentations and omission, the defendants
sought to create the impression that VIOXX was
safe for human use and constituted a safe form of
a non-steroid anti-inflammatory drug.

14.   The defendants failed to protect users
from serious dangers that the defendants knew or
should have known would result from the use of
VIOXX.

5

15.   The defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the defendants.

16.   The defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17.   The defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18.   The defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19.   The promotional campaign initiated, created, monitored, an/or supported by the defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs.  This information was false, misleading, and fraudulent.  At all times relevant herein, the defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs.  The promotional campaign continued to create the false impression

6

of the successful and safe use of the drug, while
at the same time the defendants were not
communicating information regarding risks and
complications that were known by or should have
been known to the defendants.

20. The defendants fraudulently,
deceptively, and unfairly misrepresented the
facts regarding VIOXX, including but not limited
to adequate testing of the drug and the
efficiency, severity, frequency, and discomfort
of side effects and adverse health effects caused
by VIOXX.

21. As a result of the defendants'
deceptive and unfair advertising and marketing
practices, VIOXX was distributed throughout the
United States and upon information and belief,
over 1 million prescriptions for VIOXX were
written in the United States, including
Massachusetts, prior to the removal of VIOXX from
the market.

22. The plaintiff began to consume VIOXX in
August 2000 through approximately September 2004.

23. The plaintiff suffered a myocardial
infarction while taking VIOXX.

24. On September 30, 2004, the defendant
Merck announced a voluntary worldwide withdrawal
of VIOXX from the market after the Adenomatous
Polyp Prevention trial (APPROVe) confirmed the
cardiovascular risks previously found in the
VIGOR study.

7

## COUNT I

### NEGLIGENCE

25.  The plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26.  It was the duty of the defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27.  It was also the duty of the defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28.  It was the continuing duty of the defendants to advise and warn purchasers, consumer, users, medical providers and other health care providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

8

29. Yet, nevertheless, wholly disregarding the aforesaid duties, the defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, inter alia, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or adequately instruct the plaintiff and consumers of VIOXX concerning the risk or likelihood of, inter alia, suffering cardiovascular events and other medical complications associated with the use of VIOXX which defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the plaintiff, and by

9

failing to use reasonable care to prevent injury
to such persons, including the plaintiff.

      f. marketing an inherently unsafe
and/or dangerous drug;

      g. misrepresenting that VIOXX was safe
when the defendants knew, or in the exercise of
reasonable care should have known, that VIOXX was
dangerous and unsafe.

      h. failing to provide adequate field
and clinical testing both before and after
marketing VIOXX;

      i. failing to disclose known risks and
instead minimizing the risks associated with the
use of VIOXX in promotional campaigns and
materials and oral representations.

      j. failing to adequately warn of
reactions, side effect, and complications
associated with the use of VIOXX.

30. As a direct and proximate result of the
unreasonable, careless, and negligent conduct of
the defendants, the plaintiff, Vera Gropper, was
caused to sustain severe and permanent injuries
including a Myocardial Infarction, as a result of
which the plaintiff has incurred medical
expenses, incurred mental and physical pain and
suffering, and suffered an impairment in her
enjoyment of life, which damages are continuing
in nature.

WHEREFORE, the plaintiff, Vera Gropper,
demands compensatory damages, plus interests and
costs.

10

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31. The plaintiff adopts by reference all
of the allegations above, each inclusive, as
though fully set forth herein.

32. The plaintiff was a person whom the
defendants could reasonably have expected to use,
consume, or be affected by the defendants'
products within the meaning of Massachusetts
General Laws c. 106, §2-318, as the defendants
knew or had reason to know that their products
could cause serious cardiovascular injuries.

33. The defendants expressly and impliedly
warranted that VIOXX was safe, merchantable, fit
for consumption, and for the use for which it was
intended and fit for its particular purpose to
relieve the signs and symptoms of osteoarthritis
and rheumatoid arthritis, the management of acute
pain in adults, and the treatment of primary
dysmenorrheal.

34. The defendants knew or had reason to
know of the particular purposes for which VIOXX
would be used.

35. The plaintiff relied upon the
defendants' skill or judgment to furnish or
select a suitable product.

11

36. The defendants breached said warranties to the plaintiff because VIOXX was unsafe and not of merchantable quality.

WHEREFORE, the plaintiff, Vera Gropper, demands compensatory damages, plus interests and costs.

## COUNT III
### MALICIOUS, WILLFUL, WANTON, AND RECKLESS
### CONDUCT OR GROSS NEGLIGENCE

37. The plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38. At least by 2000, the defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Vera Gropper and others in her position.

39. Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

40. The defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of

12

the plaintiff an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

41. Because the defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiff is entitled to compensatory damages.

WHEREFORE, the plaintiff, Vera Gropper, demands compensatory damages plus interest and costs.

### COUNT IV

#### DEFECTIVE DESIGN/STRICT LIABILITY

42. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

43. At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff.

13

44.  At all times material hereto, VIOXX
which were researched, formulated, tested,
developed, designed, licensed, assembled,
compounded, marketed, promoted, distributed,
detailed, and/or sold by Defendants were expected
to reach, and did reach, prescribing physicians
and consumers including Plaintiff, without
substantial change in the condition in which they
were sold.

45.  At all times material hereto, VIOXX was
in a defective and unreasonably dangerous
condition at the time it was placed in the stream
of commerce in ways which include, but are not
limited to, one or more of the following
particulars:

A.   When placed in the stream of commerce,
     VIOXX contained unreasonably dangerous
     design defects and was not reasonably
     safe as intended to be used, subjecting
     Plaintiff to risks which exceeded the
     benefits of VIOXX;

B.   When placed in the stream of commerce,
     VIOXX were defective in design and
     formulation, making use of VIOXX more
     dangerous than an ordinary consumer
     would expect;

C.   VIOXX were insufficiently tested;

D.   The intended use of VIOXX caused
     harmful side effects which outweighed
     any potential utility; and

E.   VIOXX were not safe for its intended
     use as a weight loss drug.

14

## COUNT V
### FAILURE TO WARN/STRICT LIABILITY

48. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

48. VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects. Plaintiff's injuries and losses are continuing in nature.

50. The physicians prescribed VIOXX to Plaintiff for the intended purpose.

51. Neither the prescribing physicians nor Plaintiff could have discovered any defect in VIOXX through the exercise of reasonable care.

52. Defendants are held to the level of knowledge of an expert in the field.

16

53. The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

54. The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous.

55. Defendants had a continuing duty to warn the prescribing physicians and Plaintiff of the dangers associated with VIOXX.

56. As a direct and legal result of Defendants' failure to warn, Plaintiff have sustained serious and permanent injuries including, but not limited to, injuries to the heart, strokes and/or other physical injuries, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future. Plaintiff' injuries and losses are continuing in nature.

WHEREFORE, Plaintiff demand judgment against Defendants for damages, as well as all costs of this action.

## COUNT VI
### FRAUDULENT/NEGLIGENT MISREPRESENTATION

57. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

58. Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff, her physicians, and anyone else Defendants knew or should have known would ingest or prescribe VIOXX.

59. Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff, the public and Plaintiff's prescribing physician of these material facts.

60. Defendants fraudulently and/or negligently misrepresented to Plaintiff, Plaintiff's physicians, the FDA, and the general

18

public that VIOXX was safe and effective, that
the benefits of taking VIOXX outweighed any
risks, and/or fraudulently and/or negligently
misrepresented and concealed safety and
effectiveness information regarding the product,
including but not limited to VIOXX's propensity
to cause serious physical harm. The continuous
and ongoing course of action constituting
fraudulent and/or negligent misrepresentation on
Plaintiff started at least as early as 2000, if
not earlier, and continued through repeated acts
and non-disclosure every year since then
throughout the United States and elsewhere.

61. VIOXX was in fact unsafe and the use of
VIOXX posed a risk of injury and death which
outweighed the purported benefits of its use,
such that injury was in fact caused to Plaintiff
and others.

62. Defendants made fraudulent and/or
negligent misrepresentations regarding adverse
information at a time when it knew, or should
have known, that VIOXX had defects, dangers, and
characteristics that were other than what
Defendants had represented to the prescribing

19

doctors or other dispensing entities, the FDA, and the consuming public, including Plaintiff. Specifically, Defendants misrepresented the following:

    a. It was dangerous to prescribe VIOXX;
    b. VIOXX carried risks of serious, life threatening adverse effects;

63. The misrepresentations alleged above were perpetuated directly and indirectly by the Defendants.

64. The fraudulent and/or negligent misrepresentations of Defendants took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose to Plaintiff and others such information.

65. Defendants knew or should have known that these representations were misleading at the time they were made or omitted, and made the representations with the intent or purpose that Plaintiff and Plaintiff's physicians would rely

20

on them, leading to the use of VIOXX by
Plaintiff.

66.  At the time of Defendants' fraudulent
and/or negligent misrepresentations, Plaintiff
and Plaintiff' physicians were unaware of the
inaccuracy of the statements being made and
believed them to be true.

67.  Plaintiff's physician and Plaintiff
justifiably relied on and were induced by the
misrepresentations and relied on the absence of
adverse safety information in the prescription
and ingestion of VIOXX.

68.  Defendants had a post-sale duty to warn
Plaintiff and or Plaintiff's physicians about
the potential risks and complications associated
with VIOXX in a timely manner.

69.  The misrepresentations by Defendants
constitute a continuing tort.

70.  Defendants made the statements and/or
omissions with the intention that Plaintiff,
Plaintiff's prescribing physicians or other
dispensing entities and the consuming public
would rely on such or the absence of such

information in selecting VIOXX as a treatment for
arthritis and pain management.

71.  As a direct and legal result of the
fraudulent and/or negligent misrepresentations of
Defendants, Plaintiff have sustained serious and
permanent injuries including, but not limited to,
injuries to the heart, strokes and/or other
physical injuries, disability, disfigurement,
mental anguish, loss of capacity for the
enjoyment of life, expense of hospitalization,
medical and nursing care and treatment, loss of
earnings, and loss of the ability to earn money
in the future.  Plaintiff' injuries and losses
are continuing in nature.

WHEREFORE, Plaintiff demand judgment against
Defendants for compensatory damages, plus interest and
costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the plaintiff prays:

1. The judgment enter against the defendants
on all Counts of this Complaint;

2. That plaintiff be awarded full, fair and
   complete compensation, for which she is
   legally entitled;

3. That the plaintiff be awarded full, fair,
   and complete compensation plus treble
   amount, attorney's fees and costs under
   M.G.L. c. 93A, §§ 2 and 9;

4. that plaintiff be awarded all appropriate
   costs, attorney's fees and interest
   authorized by law;

5. That the court enter such other relief as

   is determined just and appropriate.

Respectfully Submitted

David C. Strouss (BBO#546253),
Marilyn T. McGoldrick, (BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

Dated: October 29, 2004

23

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPT. OF THE TRIAL
COURT    04-4301

```
                                    )
VERA GROPPER,                       )
Plaintiff                           )
                                    )
                                    )
                                    )
vs.                                 )
                                    )
                                    )
                                    )
MERCK & CO., INC.,                  )
and John and Jane Does, as          )
Sales representatives for           )
MERCK & CO., INC.,                  )
    Defendants.                     )
                                    )
```

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

JAN 12 2005

_____
CLERK

## NOTICE OF ADDITION OF VIOLATION OF M.G.L. c.93A
## COUNT AND FILING OF FIRST AMENDED COMPLAINT

Now come the plaintiff, pursuant to Mass. R. Civ.
P. 15(a) and files the attached First Amended
Complaint in regard to the above-captioned matter.

The First Amended Complaint reflects the addition
of a count for violation of the Consumer Protection
Act, M.G.L. c. 93A against all defendants.  In support

of this notice, plaintiff's counsel states that no

responsive pleading has been served.

Respectfully submitted,

David C. Strouss, BBO#546253
Marilyn T. McGoldrick, BBO#561766
Allyson S. Hauck, BBO# 659547
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110
(617) 720-1333

DATED:  1/12/05

## CERTIFICATE OF SERVICE

I, Allyson S. Hauck, Esquire, hereby certify that
on this day I mailed, postage prepaid, a copy of the
foregoing Notice of Addition of M.G.L. c. 93A Count and
Filing of First Amended Complaint to all defendants'
counsel of records in the above-captioned matter.

DATED:  1/12/05

27

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPT. OF THE TRIAL
COURT

VERA GROPPER,
Plaintiff

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FIRST AMENDED
COMPLAINT

vs.

___ & CO., INC.,
_____ as
_____ for
___,
_____

Now comes the plaintiff, by her attorneys, and
file the following complaint:

Party Plaintiff

The Plaintiff, Vera Gropper, resides at 14
Hall Avenue, Somerville, Massachusetts, 02144,
and at all relevant times herein, was a resident
of the Commonwealth of Massachusetts.

Party Defendants

2A. The Defendant, Merck & Co., Inc.,
(hereinafter "Merck") is a corporation
incorporated under the laws of the State of New
Jersey, having a principal place of business in
the State of New Jersey, and has conducted
business in the Commonwealth of Massachusetts.
At all relevant times, hereto, Merck was in the

1

business of promoting, marketing, and
distributing the pharmaceutical VIOXX(Refecoxib).

2b. John and Jane Does are sales
representatives for Merck promoting and
distributing VIOXX to physicians within the
Commonwealth of Massachusetts. Upon information
and belief all or some of the John and Jane Doe
Sales Representatives are individuals residing in
the Commonwealth of Massachusetts.

As used in this Complaint, the term
"defendant" shall include any party defendants
identified in paragraphs 2a through 2b hereof,
and their predecessors, which shall include, but
is not limited to, any person, corporation,
company or business entity: which formed part of
any combination, consolidation, merger or
reorganization from which any party defendant was
created or was the surviving corporation; whose
assets, stock, property, products or product line
was acquired by any party defendant; whose patent
rights, trademark rights, trade secrets of
goodwill was acquired by any party defendant; or
which was dominated or controlled by any party
defendant to such an extent that said party
defendant was the "alter ego" of said
corporation.

## JURISDICTION

3. The plaintiff's cause of action arises
from the defendants' (1) transacting business in
Massachusetts; (2) contracting to supply and/or
sell goods in Massachusetts; (3) doing or causing

2

a tortuous act to be done in Massachusetts; and/or (4) causing the consequence of a tortuous act to occur within Massachusetts, and the defendants do, or solicit business, or engage in a persistent course of conduct or derive substantial revenue from the sale of goods in Massachusetts.

**FACTS**

4. At all relevant times herein, the defendants individually and/or in conjunction with other persons or entities for whose conduct they were legally responsible developed, created, manufactured, designed, tested, labeled, packaged, distributed, supplied, marketed, sold, advertised, and/or otherwise distributed in interstate trade and commerce the drug VIOXX.

5. On information and belief, the drugs were manufactured, distributed, and sold as medication to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal.

6. In May of 1999 VIOXX was approved by the FDA. The defendants individually began actively and aggressively promoting, marketing and selling the drug in the United States and eighty other countries. The defendants fraudulently induced people to use its drug for arthritis and pain relief without adequately warning people of the risks associated with the drug that were known or should have been known to the defendants.

3

7. The defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8. The defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9. On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

10. On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11. The Defendant MERCK did not communicate the findings of cardiovascular risks from the

4

VIGOR study until April 2002 when they sent a
"Dear Doctor" letter and made changes and
additions to VIOXX label regarding cardiovascular
risks under the header "Precautions". MERK did
not add stroke or any of the other adverse
reactions linked to VIOXX that it knew or should
have known.

12.  The defendants engaged in and/or
actively participated in inducing and/or
encouraging use of VIOXX by providing incentives
for its use and by encouraging physicians and
other health care providers to prescribe it
without the benefit of the full and complete
information known to the defendants.  The
defendants disseminated false and misleading
materials which failed to disclose the risks
associated with the use of VIOXX.

13.  Upon information and belief, the
defendants also unfairly and deceptively
encouraged the use of VIOXX, by falsely
misleading potential users including the
plaintiff, Vera Gropper, concerning the risks
associated with its use.  By affirmative
misrepresentations and omission, the defendants
sought to create the impression that VIOXX was
safe for human use and constituted a safe form of
a non-steroid anti-inflammatory drug.

14.  The defendants failed to protect users
from serious dangers that the defendants knew or
should have known would result from the use of
VIOXX.

15. The defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the defendants.

16. The defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17. The defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18. The defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19. The promotional campaign initiated, created, monitored, an/or supported by the defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs. This information was false, misleading, and fraudulent. At all times relevant herein, the defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression

6

of the successful and safe use of the drug, while
at the same time the defendants were not
communicating information regarding risks and
complications that were known by or should have
been known to the defendants.

20.  The defendants fraudulently,
deceptively, and unfairly misrepresented the
facts regarding VIOXX, including but not limited
to adequate testing of the drug and the
efficiency, severity, frequency, and discomfort
of side effects and adverse health effects caused
by VIOXX.

21.  As a result of the defendants'
deceptive and unfair advertising and marketing
practices, VIOXX was distributed throughout the
United States and upon information and belief,
over 1 million prescriptions for VIOXX were
written in the United States, including
Massachusetts, prior to the removal of VIOXX from
the market.

22.  The plaintiff began to consume VIOXX in
August 2000 through approximately September 2004.

23.  The plaintiff suffered a myocardial
infarction while taking VIOXX.

24.  On September 30, 2004, the defendant
Merck announced a voluntary worldwide withdrawal
of VIOXX from the market after the Adenomatous
Polyp Prevention trial (APPROVe) confirmed the
cardiovascular risks previously found in the
VIGOR study.

## COUNT I

### NEGLIGENCE

25. The plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26. It was the duty of the defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27. It was also the duty of the defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28. It was the continuing duty of the defendants to advise and warn purchasers, consumer, users, medical providers and other health care providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

29. Yet, nevertheless, wholly disregarding the aforesaid duties, the defendants breached their duties by:

8

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, _inter alia_, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or adequately instruct the plaintiff and consumers of VIOXX concerning the risk or likelihood of, _inter alia_, suffering cardiovascular events and other medical complications associated with the use of VIOXX which defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the plaintiff, and by failing to use reasonable care to prevent injury to such persons, including the plaintiff.

9

  f. marketing an inherently unsafe and/or dangerous drug;

  g. misrepresenting that VIOXX was safe when the defendants knew, or in the exercise of reasonable care should have known, that VIOXX was dangerous and unsafe.

  h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

  i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

  j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

  30. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendants, the plaintiff, Vera Gropper, was caused to sustain severe and permanent injuries including a Myocardial Infarction, as a result of which the plaintiff has incurred medical expenses, incurred mental and physical pain and suffering, and suffered an impairment in her enjoyment of life, which damages are continuing in nature.

  WHEREFORE, the plaintiff, Vera Gropper, demands compensatory damages, plus interests and costs.

10

## COUNT II

### BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31. The plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32. The plaintiff was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

33. The defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34. The defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35. The plaintiff relied upon the defendants' skill or judgment to furnish or select a suitable product.

36. The defendants breached said warranties to the plaintiff because VIOXX was unsafe and not of merchantable quality.

11

WHEREFORE, the plaintiff, Vera Gropper, demands compensatory damages, plus interests and costs.

### COUNT III

### MALICIOUS, WILLFUL, WANTON, AND RECKLESS CONDUCT OR GROSS NEGLIGENCE

37. The plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38. At least by 2000, the defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Vera Gropper and others in her position.

39. Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

40. The defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the plaintiff an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those

12

affected by the dangers from information about
those dangers.

41. Because the defendants acted
maliciously, willfully, wantonly, recklessly, or
with gross negligence, in marketing their
hazardous product, in ignoring the medical and
scientific data which was available to them, and
depriving consumers, users, and the general
public from that medical and scientific data, the
plaintiff is entitled to compensatory damages.

WHEREFORE, the plaintiff, Vera Gropper,
demands compensatory damages plus interest and
costs.

## COUNT IV

### DEFECTIVE DESIGN/STRICT LIABILITY

42. Plaintiff adopts by reference all of
the allegations above, each inclusive, as though
fully set forth herein.

43. At all times material hereto,
Defendants engaged in the business of
researching, formulating, testing, developing,
designing, licensing, assembling, compounding,
marketing, promoting, distributing, detailing,
and/or selling VIOXX that were defective and
unreasonably dangerous to consumers, including
Plaintiff.

44. At all times material hereto, VIOXX
which were researched, formulated, tested,

13

developed, designed, licensed, assembled,
compounded, marketed, promoted, distributed,
detailed, and/or sold by Defendants were expected
to reach, and did reach, prescribing physicians
and consumers including Plaintiff, without
substantial change in the condition in which they
were sold.

45. At all times material hereto, VIOXX was
in a defective and unreasonably dangerous
condition at the time it was placed in the stream
of commerce in ways which include, but are not
limited to, one or more of the following
particulars:

A.   When placed in the stream of commerce,
     VIOXX contained unreasonably dangerous
     design defects and was not reasonably
     safe as intended to be used, subjecting
     Plaintiff to risks which exceeded the
     benefits of VIOXX;
B.   When placed in the stream of commerce,
     VIOXX were defective in design and
     formulation, making use of VIOXX more
     dangerous than an ordinary consumer
     would expect;
C.   VIOXX were insufficiently tested;
D.   The intended use of VIOXX caused
     harmful side effects which outweighed
     any potential utility; and
E.   VIOXX were not safe for its intended
     use as a weight loss drug.

14

46. But for the aforementioned defective and unreasonably dangerous conditions, VIOXX would not have been prescribed to Plaintiff, Plaintiff would not have ingested VIOXX, and Plaintiff would not have sustained the injuries alleged herein.

47. As a direct and legal result of the defective condition of VIOXX, Plaintiff have sustained serious and permanent injuries including, but not limited to, injuries to the heart, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and treatment, loss of earnings and loss of the ability to earn money in the future. Plaintiff' injuries and losses are continuing in nature.

WHEREFORE, Plaintiff demand judgment against Defendants for compensatory damages plus interest and costs.

## COUNT V
## FAILURE TO WARN/STRICT LIABILITY

48. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

48. VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects. Plaintiff's injuries and losses are continuing in nature.

50. The physicians prescribed VIOXX to Plaintiff for the intended purpose.

51. Neither the prescribing physicians nor Plaintiff could have discovered any defect in VIOXX through the exercise of reasonable care.

52. Defendants are held to the level of knowledge of an expert in the field.

16

53. The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

54. The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous.

55. Defendants had a continuing duty to warn the prescribing physicians and Plaintiff of the dangers associated with VIOXX.

56. As a direct and legal result of Defendants' failure to warn, Plaintiff have sustained serious and permanent injuries including, but not limited to, injuries to the heart, strokes and/or other physical injuries, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future. Plaintiff' injuries and losses are continuing in nature.

17

WHEREFORE, Plaintiff demand judgment against
Defendants for damages, as well as all costs of this
action.

## COUNT VI
## FRAUDULENT/NEGLIGENT MISREPRESENTATION

57. Plaintiff adopts by reference all of
the allegations above, each inclusive, as though
fully set forth herein.

58. Defendants, having undertaken the
manufacturing, marketing, prescription
dispensing, distributing and promotion of VIOXX
owed a duty to provide complete and accurate
information regarding VIOXX to Plaintiff, her
physicians, and anyone else Defendants knew or
should have known would ingest or prescribe
VIOXX.

59. Defendants misrepresented material
facts regarding the safety and efficacy of VIOXX,
and failed to inform Plaintiff, the public and
Plaintiff's prescribing physician of these
material facts.

60. Defendants fraudulently and/or
negligently misrepresented to Plaintiff,
Plaintiff's physicians, the FDA, and the general

18

public that VIOXX was safe and effective, that
the benefits of taking VIOXX outweighed any
risks, and/or fraudulently and/or negligently
misrepresented and concealed safety and
effectiveness information regarding the product,
including but not limited to VIOXX's propensity
to cause serious physical harm. The continuous
and ongoing course of action constituting
fraudulent and/or negligent misrepresentation on
Plaintiff started at least as early as 2000, if
not earlier, and continued through repeated acts
and non-disclosure every year since then
throughout the United States and elsewhere.

61. VIOXX was in fact unsafe and the use of
VIOXX posed a risk of injury and death which
outweighed the purported benefits of its use,
such that injury was in fact caused to Plaintiff
and others.

62. Defendants made fraudulent and/or
negligent misrepresentations regarding adverse
information at a time when it knew, or should
have known, that VIOXX had defects, dangers, and
characteristics that were other than what
Defendants had represented to the prescribing

19

doctors or other dispensing entities, the FDA,
and the consuming public, including Plaintiff.
Specifically, Defendants misrepresented the
following:

> a. It was dangerous to prescribe VIOXX;
> b. VIOXX carried risks of serious, life
> threatening adverse effects;

63. The misrepresentations alleged above
were perpetuated directly and indirectly by the
Defendants.

64. The fraudulent and/or negligent
misrepresentations of Defendants took the form
of, among other things, express and implied
statements, publicly disseminated misinformation,
misinformation provided to regulatory agencies,
inadequate, incomplete and misleading warnings
about the subject products, failure to disclose
important safety and injury information regarding
the products while having a duty to disclose to
Plaintiff and others such information.

65. Defendants knew or should have known
that these representations were misleading at the
time they were made or omitted, and made the
representations with the intent or purpose that
Plaintiff and Plaintiff's physicians would rely

20

on them, leading to the use of VIOXX by
Plaintiff.

66. At the time of Defendants' fraudulent
and/or negligent misrepresentations, Plaintiff
and Plaintiff' physicians were unaware of the
inaccuracy of the statements being made and
believed them to be true.

67. Plaintiff's physician and Plaintiff
justifiably relied on and were induced by the
misrepresentations and relied on the absence of
adverse safety information in the prescription
and ingestion of VIOXX.

68. Defendants had a post-sale duty to warn
Plaintiff and or Plaintiff's physicians about
the potential risks and complications associated
with VIOXX in a timely manner.

69. The misrepresentations by Defendants
constitute a continuing tort.

70. Defendants made the statements and/or
omissions with the intention that Plaintiff,
Plaintiff's prescribing physicians or other
dispensing entities and the consuming public
would rely on such or the absence of such

21

information in selecting VIOXX as a treatment for arthritis and pain management.

71. As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, Plaintiff have sustained serious and permanent injuries including, but not limited to, injuries to the heart, strokes and/or other physical injuries, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money in the future. Plaintiff' injuries and losses are continuing in nature.

WHEREFORE, Plaintiff demand judgment against Defendants for compensatory damages, plus interest and costs.

### Count VII

### Violation of M.G.L. c.93A

72. The plaintiff repeats, realleges, and reavers paragraphs one through seventy-one above as if expressly set forth fully hereinafter.

73. At all relevant times hereto the defendants were engaged in trade or commerce.

74. The acts of the defendants alleged in Counts I through VI, and as outlined in the Facts, constitute unfair or deceptive acts or practices within the meaning of G.L. c. 93A, §§ 2 and 3, 940 C.M.R. 3.05(1), and 940 C.M.R. 3.16(1) and (2).

75. The actions of the defendants described herein were performed willfully and knowingly.

76. As a result of the unfair or deceptive acts or practices described in the Facts, the plaintiff sustained injury including but not limited to the injuries stated in Paragraph 23 above, incorporated herein.

Wherefore, the plaintiff, Vera Gropper demands judgment against the defendants in an amount that is

23

fair and reasonable; plus treble such amount as provided by M.G.L. c. 93A, sec. 9(3); plus interest, costs and attorneys' fees to the plaintiff; and award such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the plaintiff prays:

1. The judgment enter against the defendants on all Counts of this Complaint;
2. That plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;
3. That the plaintiff be awarded full, fair, and complete compensation plus treble amount, attorney's fees and costs under M.G.L. c. 93A, §§ 2 and 9;
4. that plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;
5. That the court enter such other relief as is determined just and appropriate.

Respectfully submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick, (BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: January 5, 2005

24

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)  PLAINTIFFS**
VERA GROPPER

**DEFENDANTS**
MERCK & CO., INC., and John and Jane Does, as Sales Representatives for MERCK & CO., INC.

**(b)** County of Residence of First Listed Plaintiff    Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Hunterdon, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
David C. Strouss, Esq., THORNTON & NAUMES LLP, 100 Summer Street, Boston, Massachusetts 02110. (617)720-1333

Attorneys (If Known)
James A. Dillon, Esq., FOLEY HOAG LLP, 155 Seaport Boulevard, Boston, Massachusetts 02110. (617)832-1000

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Action for compensatory damages for ingestion of VIOXX

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):
JUDGE                    DOCKET NUMBER

DATE
2/3/05
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1. Title of case (name of first party on each side only) Vera Gropper v. Merck & Co., Inc.

2005 FEB -3 P 2: 51

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

U.S. DISTRICT COURT
DISTRICT OF MASS.

- [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [ ]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

- [✓] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

05cv10217WGY

- [ ]  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

- [ ]  V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]     NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

YES [ ]     NO [✓]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]     NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]     NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [ ]     NO [✓]

A.   If yes, in which division do all of the non-governmental parties reside?

Eastern Division [ ]     Central Division [ ]     Western Division [ ]

B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [✓]     Central Division [ ]     Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES [ ]     NO [✓]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  James A. Dillon, Esq., FOLEY HOAG LLP

ADDRESS  155 Seaport Boulevard, Boston, Massachusetts 02210

TELEPHONE NO.  (617)832-1000

(Coversheetlocal.wpd - 10/17/02)